**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| John M. Cobin,<br><br>               Plaintiff,<br><br>vs.<br><br>Hearst-Argyle Television, Inc. (d/b/a WYFF 4), Entercom Communications Corp. (d/b/a WORD/WYRD FM), Meredith Corporation (d/b/a WHNS-Channel 21 Fox Carolina), Gannett Company, Inc. (d/b/a *The Greenville News*), Media General (d/b/a WSPA News 7),<br><br>               Defendants. | C. A. No. 6:07-cv-3869-HFF-BHH<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

      Defendants Hearst-Argyle Television, Inc., Entercom Communications Corp., Meredith Corporation, Gannett Company, Inc., and Media General Operations, Inc., respectfully submit this memorandum of law in support of their motion to dismiss.

SUMMARY

      This is an action for defamation brought *pro se* by the Libertarian Party's 2006 candidate for the United States Congress, a man who describes himself in his Complaint as "a rather high-profile candidate for public office with outspoken views." Complaint ¶ 5. He has sued five Upstate news media – three television stations, one radio station, and the Greenville newspaper – over their news stories and articles concerning the plaintiff's arrest on November 4, 2006, just several days before the election, for criminal domestic violence in the first degree.

      There is no question that the plaintiff was, in fact, arrested and charged with the crime of first degree criminal domestic violence in connection with an alleged assault upon his estranged

1

wife. His Complaint admits as much. *See* Complaint ¶¶ 3, 4, 6. Further, a simple comparison of the allegations of the Complaint with the contents of the incident report of the plaintiff's arrest demonstrate beyond dispute that the defendants' respective broadcasts and publications did nothing more than restate what was contained in the official public record of the plaintiff's arrest and charges. Accordingly, the broadcasts and publications at issue in this action are protected as a matter of law by the constitutional and common law privilege of "fair report," and the plaintiff's Complaint should be dismissed with prejudice.

## THE PLAINTIFF'S COMPLAINT

The plaintiff's Complaint attacks news stories that were broadcast by WYFF, WSPA and WHNS television stations and by WORD radio station, as well as articles that were published by *The Greenville News*, beginning on November 4, 2006, and continuing for several days.[1] *See* Complaint ¶ 3. The Complaint alleges that the defendants defamed him by reporting that he had been arrested for having "beat[] up his wife," "pushed her down twice," "grabbed his wife's neck," "push[ed] and shov[ed] her," "assaulted" her, "left bruises" and "visible injuries" on her, and "fought with his wife at her home." Complaint ¶ 5. The Complaint does not allege any other defamatory statements by the defendants.

## THE INCIDENT REPORT

The broadcasts and articles at issue in this action explicitly attributed the information in them to the incident report filed by the Greenville County Sheriff's Office. The incident report is

---

[1] Samples of the stories broadcast and published by the defendants are attached as exhibits to this memorandum. *See* WYFF broadcast and script (Exhibits 2 and 3); *Greenville News* article (Exhibit 4). Their inclusion is solely for the purpose of illustrating the nature of the media reports that are under attack here. This motion is <u>not</u> based on them, however, but rather is based only on the allegations of the Complaint and the contents of the Greenville County Sheriff's Office incident report.

2

a public record of which the Court may take judicial notice.[2]  It states that on November 4, 2006, the plaintiff was arrested and charged with "CRIMINAL DOMESTIC VIOLENCE 1ST."  Incident Report, p.1 (Exhibit 1).  It names the plaintiff's wife as the victim.  *Id.*  It describes the "weapon type" as "HANDS."  *Id.*  The arresting officer's descriptive narrative reads in pertinent part as follows:

> "Myself and Deputy Colling (C14) responded to 1524 Perdita Way in reference to a domestic disturbance.
>
> "While en route dispatch advised that the suspect was leaving the apartment with their infant child in a black Volvo. …
>
> "I met with the suspect and complainant [plaintiff's brother-in-law, who had followed and blocked the plaintiff's car from proceeding further] at the CVS at 821 S. Batesville Rd. and Deputy Colling (C14) met with the victim at her apartment.
>
> "The suspect, John Cobin, said that this morning he called his wife, Lesle Cobin, and arranged to pick up their 6 month old son.  He said that him and his wife have been separated since late July of this year.  He said he arrived at her apartment and she asked him to come inside.  He said that they began to discuss some liens and other financial issues and his wife became upset.  He said that he had the baby carrier in his hand and told her that he wanted to see his son tomorrow at 4:00 p.m.  He said that she told him no and pulled on the baby carrier.  **He said one time that he overpowered her and pushed her down** and kept control of the baby carrier.  **A different time he said that** she pushed him in the chest first while she was holding onto the baby carrier and **he then pushed her down against the couch**.
>
> …
>
> "I contacted Deputy Colling (C14) and he advised me that **the victim had bruises on her right shin and right biceps area.  He said that the victim's right ankle was slightly swollen and bruised as well.  He said the victim had redness around her throat** but no bruising was visible.  **He said that the victim stated [the plaintiff] pushed her down and grabbed her by the neck** before he left with their infant child. …"

---

[2] *See, e.g.,* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); *State v. Little*, 227 S.C. 60, 86 S.E.2d 875, 879 (1955) (court properly took judicial notice of witness's jail sentence because the sentence was public record).

3

*Id.*, pp. 1-3 (emphasis added).

The incident report further states that Cobin was put in jail, arraigned, and released on bond. *Id.*, p.3.

## ARGUMENT

Because they merely restate what was contained in the official incident report, the broadcasts by WYFF, WHNS, WSPA, and WORD and the article published by *The Greenville News* fall squarely within the privilege of fair report. The "fair report" privilege has long been recognized in South Carolina both under the common law and as a constitutional protection, and has been expressly adopted by the Fourth Circuit. *See Reuber v. Food Chemical News, Inc.,* 925 F.2d 703, 712 (4th Cir. 1991); *George v. Kay*, 632 F. 2d 1103, 1105 (4th Cir. 1980), *cert. denied*, 450 U. S. 1029 (1981); *Eubanks v. Smith*, 292 S. C. 57, 354 S. E. 2d 898 (1987); *Padgett v. Sun News*, 278 S. C. 26, 292 S. E. 2d 30 (1982); *McClain v. Arnold*, 275 S. C. 282, 270 S. E. 2d 124 (1980); *Jones v. Garner*, 250 S. C. 479, 158 S. E. 2d 909 (1968); *Lybrand v. State Co.*, 179 S. C. 208, 184 S. E. 580 (1936); *Oliveros v. Henderson*, 116 S. C. 77, 106 S. E. 855 (1921). While the early cases discuss and apply the privilege under the common law, in *Padgett v. Sun News, supra*, the South Carolina Supreme Court recognized that there is a constitutional basis for the common law privilege, in that holding a publisher liable for an accurate report of a governmental action or record would constitute liability without fault in violation of *Gertz v. Robert Welch, Inc.*, 418 U. S. 323 (1974).

The privilege protects those who accurately report the substance of governmental actions or records, even if what was stated in the public record or proceeding turns out to be false and defamatory. As the Fourth Circuit has explained:

> "[The] fair report privilege shields news organizations from defamation claims when publishing information originally based upon government reports or actions.

4

> … Government documents serve as 'the basic data of governmental operations.' *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492, 95 S. Ct. 1029, 1044, 43 L. Ed. 2d 328 (1975). The fair report privilege encourages the media to report regularly on government operations so that citizens can monitor them."

*Reuber v. Food Chemical News, Inc., supra*, 925 F.2d at 712.

The standard of accuracy is one of <u>substantial</u> truth, except that it applies with respect to the official act or record on which the report is based rather than the underlying truth of the matter. "It is not necessary that [the report] be exact in every immaterial detail. ... It is enough that it conveys to the persons who read it a substantially correct account of the proceedings." RESTATEMENT (SECOND) OF TORTS § 611 comment f (1977). As long as the report is a fair and accurate summary of the governmental act, proceeding, or record, the person reporting it does not have to investigate the underlying truth of the matter, nor may he be held liable for the negligence or bad faith of the person who was the source of the defamatory charge. *See Padgett, supra*, 278 S.C. at 31, 292 S.E.2d at 34.

An arrest by a law enforcement officer is an official action, and the incident report of the arrest is an official government record. Thus, reports of arrests, the criminal charges alleged, and the contents of the arrest warrants and incident reports come within the privilege:

> "The fair report privilege protects published reports of arrests by police. An arrest by an officer is an official action, [and] a report of the fact of the arrest or the charge of crime made by the officer in making or returning the arrest is therefore within the fair report privilege. Thus, a newspaper's publication of the fact that one has been arrested, and upon what accusation, is not actionable, if true. Therefore, so long as a newspaper's 'rough and ready summary' of the arrest is 'substantially correct,' the newspaper's report is protected by the privilege."

*Yohe v. Nugent*, 321 F.3d 35, 43 (1st Cir. 2003) (citations, quotation marks and brackets omitted). In short, regardless of whether the charges leading to the arrest are true or not, if the press accurately reports the fact of the arrest and the contents of the incident report on which the arrest is based, the press is immune from liability. The constitutional values underlying this privilege

5

are heightened significantly when, as in this case, the person arrested is a candidate for public office in an election that is only a few days distant, and the arrest is for a crime of violence. Such a matter is one of substantial public import that needs to be reported, and the press should not refrain from doing so for fear that they could be held liable for defamation if the charges on which the arrest was based turn out to be untrue.

The plaintiff's own Complaint and the incident report from the Greenville County Sheriff's Office establish that the news stories published by the defendants – as alleged by the very words used by the plaintiff in his Complaint – fall within this privilege. The Complaint is predicated on the following allegations of defamation:

- "beat[] up his wife,"
- "pushed her down twice,"
- "grabbed his wife's neck,"
- "push[ed] and shov[ed] her,"
- "assaulted" her,
- "left bruises" and "visible injuries" on her, and
- "fought with his wife at her home."

The incident report states the following:

- "[Plaintiff] overpowered her and pushed her down …"
- "A different time ... he then pushed her down against the couch."
- "[T]he victim had bruises on her right shin and right biceps area … the victim's right ankle was slightly swollen and bruised as well … the victim had redness around her throat …"
- "[He] pushed her down and grabbed her by the neck …"

6

Given the indisputable contents of the incident report, there is no question that the articles and broadcasts of the defendants, as alleged in the Complaint, were fair and accurate reports of the official document of the plaintiff's arrest. It is immaterial that the defendants' news reports paraphrased the incident report. "The privilege does not require that the published report be verbatim of the official report but it must only be substantially correct." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 254 (4th Cir. 1988). Because they presented a substantially accurate summary of the facts stated in the incident report, the defendants' publications are immune from liability, as a matter of law, under the fair report privilege.

## CONCLUSION

Our system of freedom of speech and of the press does not allow a candidate for public office to bring suit against the news media for accurately and truthfully reporting on his arrest, the charges for which he was arrested, and the facts stated in the official report of his arrest.

The Court should dismiss this action with prejudice.

                Respectfully submitted,

                s/ Carl F. Muller
                Carl F. Muller (No. 3602)
                Wallace K. Lightsey (No. 1037)
                Hannah Rogers Metcalfe (No. 9943)
                WYCHE, BURGESS, FREEMAN & PARHAM, P.A.
                Post Office Box 728
                Greenville, SC  29602-0728
                Telephone:  864-242-2800
                Telecopier: 864-235-8900
                E-Mail:  cmuller@wyche.com; wlightsey@wyche.com;
                hmetcalfe@wyche.com

Date:  December 7, 2007        **ATTORNEYS FOR DEFENDANTS**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| John M. Cobin,<br><br>              Plaintiff,<br><br>vs.<br><br>Hearst-Argyle Television, Inc. (d/b/a WYFF 4), Entercom Communications Corp. (d/b/a WORD/WYRD FM), Meredith Corporation (d/b/a WHNS-Channel 21 Fox Carolina), Gannett Company, Inc. (d/b/a *The Greenville News*), Media General (d/b/a WSPA News 7),<br><br>              Defendants. | C. A. No. 6:07-cv-3869-HFF-BHH<br><br>**CERTIFICATE OF SERVICE** |

This is to certify that on this 7th day of December, 2007, a true and correct copy of the within and foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** was served on plaintiff (*pro se*) via First Class U.S. Mail, postage prepaid, to the following address:

    John M. Cobin, *pro se*
    1607 Scuffletown Road
    Fountain Inn, SC 29644


                                <u>s/ Carl F. Muller</u>
                                Carl F. Muller
                                Attorney for the Defendants