IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| John M. Cobin,               )<br><br>         Plaintiff,    )<br><br>vs.              )<br><br>Hearst-Argyle Television, Inc.<br>(d/b/a WYFF 4), Entercom<br>Communications Corp. (d/b/a<br>WORD/WYRD FM), Meredith<br>Corporation (d/b/a WHNS-Channel 21<br>Fox Carolina), Gannett Company, Inc.<br>(d/b/a The Greenville News),<br>Media General (d/b/a WSPA News 7),<br><br>      Defendants.[1]  )| Civil Action No. 6:07-3869-HFF-BHH<br><br>**ORDER AND<br>REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

     This matter is before the Court on the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In his Complaint, the plaintiff alleges that the defendants published defamatory articles, broadcasts, and reports concerning him. The defendants have moved to dismiss the plaintiff's claims. [Doc. 13.] A hearing was had regarding the motion on March 26, 2008.

     Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

---

[1] The Court will identify the defendants by their "doing business as" designations.

## FACTUAL BACKGROUND

The plaintiff has averred the following facts in his Complaint.  In 2006, the plaintiff was the Libertarian Party candidate for the 4th United States Congressional District of South Carolina.  (Compl. ¶ 2.)  On November 4, 2006, three days before the election (Compl. ¶ 2, 3), the plaintiff was arrested (Compl. ¶ 4) for Criminal Domestic Violence (Def. Ex. 1 (Incident Report).)

The plaintiff claims that the defendants defamed his reputation by misrepresenting the facts of his arrest. Specifically, the Complaint states that the reports and broadcasts of the defendants embellished the severity of the incident from the account actually described in the police report.  (Compl. ¶ 4.)  The Complaint further contends that the defendants negligently and maliciously broadcast slanderous, untrue defamatory statements including, but not limited to, the allegations that the plaintiff had "beat[] up his wife," "grabbed his wife's neck," and "pushed her down twice" leaving "bruises" and "visible injuries."  (Compl. ¶ 5.)

## APPLICABLE LAW

### LIBERAL CONSTRUCTION OF *PRO SE* COMPLAINT

The plaintiff brought this action *pro se*. This fact requires that her pleadings be accorded liberal construction. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir.1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th 1978).  *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.  *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir.1999)  A court may not construct the plaintiff's

2

legal arguments for her. *Small v. Endicott*, 998 F.2d 411 (7th Cir.1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985).

**MOTION TO DISMISS STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief.  In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.  *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted).

## DISCUSSION

**I.     FAIR REPORT PRIVILEGE**

As stated, the plaintiff has alleged that the defendants, through various articles and television and radio broadcasts (collectively the "News Reports"), have misrepresented the facts of his arrest for criminal domestic violence and, thereby, defamed his reputation.  The defendants argue that the contents of the News Reports at issue in this case are protected by the "fair report" privilege, insofar as they accurately recounted the details of a governmental record – namely the public police report of the plaintiff's arrest.  *See Reuber v. Food Chemical News, Inc.*, 925 F.2d 703, 712 (4th Cir. 1991).  As the defendants attest, "[The] fair report privilege shields news organizations from defamation claims when publishing information originally based upon government reports or actions." *Id.* (quotation and citations omitted).  The privilege is an exception to the "republication rule" which states that "one who repeats a defamatory statement is as liable as the original defamer." *Reuber*, 925 F.2d at 712 (quotation and citation omitted).  The fair report privilege, therefore, protects the reporting source if the contents of the governmental record ultimately

3

proves defamatory itself.  South Carolina recognizes the fair report privilege. *See Jones v. Garner*, 158 S.E.2d 909, 913 (S.C. 1968); *see also White v. Wilkerson*, 493 S.E.2d 345, 348 (S.C.1997).

In support of their motion, the defendants beg reference to the police report of the incident ("Police Report"), in which it is alleged that the plaintiff assaulted his wife. (Def. Ex. 1.)  The defendants have compared the contents of that report with the allegedly defamatory statements as identified in the plaintiff's Complaint (Compl. ¶ 5).  The defendants argue that such a comparison reveals that the News Reports, as challenged by the plaintiff, are in fact an accurate reflection of the police report and, therefore, entitled to the protections of the fair report privilege.

The Court disagrees that application of the privilege may be resolved on this motion to dismiss based *solely* on a comparison of the Police Report and the Complaint, however. Specifically, the Court finds that to resolve the motion to dismiss requires resort to materials, which are outside of the Complaint – namely the allegedly objectionable News Reports themselves.   Normally, recourse to materials outside of the Complaint is impermissible on a motion pursuant to Fed. R. Civ. P. 12(b)(6).  For various reasons, discussed below, the Court finds that both the Police Report and the News Reports may be considered and will address each in turn.

It appears that the Police Report, relied upon by the defendants, is properly reviewable as a public record.  On a motion to dismiss "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, *and matters of which a court may take judicial notice*."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007).  The Court may take "judicial notice of matters of public record." *Secretary of State For Defence v. Trimble Navigation Ltd.*, 484

4

F.3d 700, 705 (4th Cir. 2007).  Accordingly, the defendants are right to argue that the Court may consider the police report as a matter of public record.  *See Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir.2005) ("a court may . . . take judicial notice of documents in the public record, including documents filed with the Securities and Exchange Commission . . . and may consider such documents in determining a motion to dismiss").

As stated, however, the Court disagrees that the applicability of the fair report privilege can be decided based on a consideration of the Police Report and the Complaint, alone.  Specifically, the articles and the broadcasts themselves must be considered, none of which have been incorporated by reference into the Complaint.  And, the defendants have not argued that they are public record.

While the defendants assume, for purposes of their motion, that the Complaint contains all of the alleged defamatory statements made by the defendants such that the actual News Reports need not be specifically considered, the Court does not read the Complaint so narrowly.  In paragraph 5, the plaintiff states generally, "Defendants negligently and maliciously broadcast and promoted slanderous, untrue, and defamatory statements about the alleged domestic violence incident that they knew were false or misleading in order to gain audience and therefore greater profits at Plaintiff's expense." (Compl. ¶ 5.)  This general averment is broad enough to implicate any defamatory statements contained in the News Reports related to the arrest and made by the defendants, whether specifically referenced in the Complaint or not.

While it is true that the plaintiff also specifically quoted various defamatory statements in his Complaint, *see id.*, it would be an unreasonably narrow construction of that pleading to limit a *pro se,* or even a represented, plaintiff to litigating these statements alone. First, the plaintiff does not identify any specific defamatory statements of defendants

5

WYFF 4, The Greenville News, or WORD FM. He only quotes allegedly defamatory statements of WSPA 7 and Fox Carolina 21.  (Compl. ¶ 5.)  So it cannot be determined from the face of the Complaint if any News Reports of WYFF 4, The Greenville News, or WORD FM were accurate summaries of the police report.

Second, it cannot be concluded even as to WSPA 21 and Fox Carolina 21 that the Complaint contains all of the alleged defamatory statements of those defendants.  To that end, the plaintiff expressly employs qualifying statements such as "in particular" when identifying alleged defamatory statements of WSPA 7, necessarily implying the existence of others not recited.  (Compl. ¶ 5.)  In fact, in his response to the motion to dismiss, the plaintiff identifies at least one defamatory statement of the defendants, related to the offense for which he was allegedly charged, which is not recited in the Complaint.  (See Resp. Mot. Dismiss at 1 (alleging that the defendants represented that he had been arrested for "Criminal Domestic Violence in the First Degree" as opposed to Criminal Domestic Violence, *First Offense*.).  He may intend others.

The Court simply cannot construe the Complaint to be the entire universe of defamatory statements alleged without review of the News Reports in question.  Insofar as the Complaint does not contain all of the alleged defamatory statements, a determination of whether the News Reports constitute a "subtantial[ly] correct" summary of the report simply cannot be made without reference to them.  *See Rushford v. New Yorker Magazine*, Inc., 846 F.2d 249, 254 (4th Cir. 1988).

Second, the Court cannot fully determine the applicability of the privilege without the opportunity to evaluate the context of the statements, the purpose for including details of the police report in the News Reports, and the way in which those details were included. Context and presentation matter for purposes of the privilege.  For instance, the fair report privilege "can be lost where, with actual malice, the press plainly adopts the defamatory

statement as its own." *See Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1098 (4th Cir. 1993).  Without review of the News Reports, the Court cannot determine whether the reports are largely factual recitations or whether they were used in some other more editorializing manner.

Because the Court finds that the content of the News Reports is relevant to the privilege analysis and because that content is not fully contained within the four corners of the Complaint, the question, therefore, arises as to whether the News Reports may be considered on a motion to dismiss without converting the motion to one for summary judgment.  *See* Fed. R. Civ. P. 12(b).  More specifically, the question is whether the Court may consider documents not attached to, but referenced in the plaintiff's Complaint, when testing the legal sufficiency of that pleading.

It appears that most circuit courts of appeal have concluded that "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993) (recognizing narrow exception to conversion rule for documents the authenticity of which are not disputed by the parties, official public records, documents central to the plaintiffs' claim and documents sufficiently referred to in the complaint); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993) ("[A] court may consider an indisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); *Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir.1993) (documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim); *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42,

7

48 (2d Cir.1991) (finding conversion not required "[w]here plaintiff has actual notice of all of the information in the movant's papers and has relied upon these documents in framing the complaint"); *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 949 (6th Cir.1990) (finding complaint's extensive quotation of unattached document permitted court to consider language and interpretation of document when defendant tendered it on motion to dismiss).  While it does not appear that the Fourth Circuit has specifically addressed the issue, district courts of this circuit have concluded similarly.  *See, e.g., Krim v. Coastal Physician Group, Inc.*, 81 F. Supp. 2d 621, 626 n.2 (M.D.N.C.1998) (finding that "court may consider the relevant SEC filings and newspaper articles referenced by and integral to the complaint without converting the motion to dismiss into a motion for summary judgment.")

In this case, the News Reports are clearly central to the plaintiff's claim and quoted significantly in the Complaint.  *See Teagardener*, 909 F.2d at 949.  The difficulty, however, is in identifying what News Reports the plaintiff means to contest.  The defendants originally submitted a Greenville News Article (the "Article") (Def. Ex. 4) and the broadcasts and transcripts of two WYFF 4 reports with their motion to dismiss.  Thereafter, the Court scheduled two hearings to give the parties opportunity to agree upon the universe of News Reports at issue in the case.  The defendants submitted other additional broadcasts, transcripts, and news articles on March 18 and 28, 2008.  [Doc. 37, 40.]  After the second hearing on March 26, 2008, the plaintiff submitted a DVD containing approximately two broadcasts of Fox Carolina 21, four broadcasts of WYFF 4, and five broadcasts of WSPA 7.  [See Doc. 39.]  Subsequently, the parties submitted a joint stipulation agreeing that **"[a]ll relevant news reports, articles and broadcasts at issue in this litigation, have been provided to this Court."**  [Doc. 41 at 1 (emphasis added).]  Notwithstanding, the defendant

8

WORD has conceded that it has no written or recorded copies of reports which it aired concerning the plaintiff [Doc. 37 Ex. 5 ¶ 3] and none are before the Court.

As the parties have agreed to the News Reports at issue and to their centrality, the Court will proceed to consider the applicability of the Fair Report Privilege to them on this Motion to Dismiss.[2]  The Court has thoroughly reviewed each of the News Reports.  Some of the television broadcasts do not have audio, but, based on the Court's own review and representations made at the hearing, it appears that written transcripts appear for any broadcasts which have no, or incomplete, audio.

As to all of the broadcasts, reports, and articles before the Court the privilege applies and is effective to bar the plaintiff's lawsuit.   The Court would make some general observations concerning the News Reports and then deal with each of the specifically alleged instances of defamation, as is necessary.

As an initial matter, all of the News Reports are strikingly similar in content.  (See generally Def. Mem. Supp. Summ. J. Exs. 2-4; [Docs. 37, 39, 40].) In general, the News Reports each identify the plaintiff, state his candidacy, detail portions of the Police Report, and include a quote from either the plaintiff or his democratic opponent.  *Id*.  Typically, the live broadcasts also contain either a photograph of the plaintiff from his arrest or a clip from a recorded video of the plaintiff posted on www.Youtube.com.  *Id*.  A number of the news broadcasts also show close-up and highlighted portions of the actual Police Report itself. *Id*.  None of the News Reports could be characterized as long or editorializing.  *See id*. They are almost exclusively factual in nature and in every instance the defendants

_____

[2]  While the Court never intended to convert the defendant's motion to one for summary judgment, Fed. R. Civ. P. 12(d), the parties have certainly been afforded "a reasonable opportunity to present all the material that is pertinent to the motion," *id*. [See Docs. 30, 33.] So whether the motion is treated as one to dismiss or for summary judgment, review of the News Reports is now appropriate.

repeatedly ascribe facts about the altercation and arrest to the Police Report expressly.[3]
*See id.*  Concerning the actual incident, the News Reports do not rely on an amalgamation

---

[3] For example, the Greenville News Article in its entirety reads as follows and is comparable in substance to the other News Reports:

> John Macarewich Cobin of Greer, the Libertarian candidate for the 4th District U.S. House seat, was charged Saturday with criminal domestic violence, an arrest warrant said.
>
> Cobin, 43, of 140 Sun Meadow Road, is attempting to unseat U.S. Rep. Bob Inglis. He is accused of pushing and shoving his wife, Lesle Long Cobin, 44, the warrant said, and causing bruises.
>
> The incident happened at 9:30 a.m. Saturday at the Thornblade Park Apartments, according to a Greenville County Sheriff's Office incident report.
>
> Cobin could not be reached for comment.
>
> He was arrested at a CVS store on Batesville Road without incident, the report said. He had the couple's 6—month—old son with him, and the boy was taken by Lesle Cobin, the incident report said.
>
> One deputy went to the store and spoke to Cobin and David Long, Cobin's brother—in—law, the incident report said.  A second deputy met with Lesle Cobin at her apartment.
>
> The couple, who separated in July, appeared to have been arguing over their son, according to the incident report.
>
> Lesle Cobin appeared to have a bruised right shin and right arm, a swollen and bruised ankle, according to the incident report.  She declined treatment from an EMS crew and indicated her brother would take her to an emergency room.
>
> Neither Cobin nor the couple's son was injured, the report said. Reached late Saturday at his home in Greer, David Long said of Lesle Cobin, "She's OK." He declined to talk about John Cobin.
>
> Cobin posted a $2,500 bond and was released from the Greenville County Detention Center, said Lt. Shea Smith, a sheriff's spokesman.
>
> Also challenging Inglis on Tuesday are William Griff Griffith, a Democrat, and C. Faye Walters, a Green Party candidate.
>
> +Staff writer E. Richard Walton can be reached at 298—4317.

of sources for the most part; they are based exclusively on the Police Report.  Moreover, the News Reports are substantially proximate to the plaintiff's undisputed arrest.  *See id*; see also *Reuber*, 925 F.2d at 714 (stating that "to find reckless disregard of truth in instances in which the privilege encourages reporters to *report in timely fashion* on the workings of government will exact costs upon one of the basic functions of a free press" (emphasis added)).  The plaintiff was arrested on November 4, 2006.  (Def. Ex. 1.)  The News Reports were made, published, and aired between, November 5 and November 7, 2006.   (See generally Def. Mem. Supp. Summ. J. Exs. 2-4; [Docs. 37, 39, 40].)  Critically, the election, in which the plaintiff was a candidate for congress, was on November 7, making these News Reports both timely and highly relevant.

In the Court's opinion, these are quintessential examples of the type of journalism which squarely implicates the purposes of the fair report privilege: "The fair report privilege encourages the media to report regularly on government operations so that citizens can monitor them. In return for frequent and timely reports on governmental activity, defamation law has traditionally stopped short of imposing extensive investigatory requirements on a news organization reporting on a governmental activity or document." *Reuber*, 925 F.2d at 712 .  Precisely because the plaintiff was a candidate for public office in the United States Congress, just days before the election, the defendants' timely reporting of the arrest justifies the kind of protection contemplated by the fair report privilege.  Accordingly, the Court has not observed any statements in the News Reports which are not a substantially accurate summation of the contents of the Police Report.

The Court, however, will address each of the plaintiff's specific claims of defamation. It does not matter whether or not the News Reports are accurate or truthful, and paraphrasing is permissible.  "The privilege does not require that the published report be verbatim of the official report but it must only be substantially correct." *Rushford*, 846 F.2d

11

249, 254; *see also Yohe v. Nugent*, 321 F.3d 35, 44 (1st Cir. 2003) (articles giving a "rough-and-ready summary" of official statement by police protected by fair report privilege); *Porter v. Guam Publications*, Inc.¸ 643 F.2d 615, 616-17 (9th Cir. 1981) (news item reported contents of "daily police bulletin" which was based on false charges filed against plaintiff protected by fair report privilege); *Seymour v. A.S. Abell Co.*, 557 F. Supp. 951 (D.C. Md.1983). The plaintiff has argued tht the following statements are defamatory.

### 1.    "Grabbed His Wife's Neck"

The plaintiff argues that the News Reports improperly embellish the incident because they claim that he "grabbed his wife's neck." That phrase, however, is essentially a direct quote from the incident report, which plainly states that the plaintiff's wife alleged that she had been "grabbed by the neck." (Def. Ex. 1 at 3.) The plaintiff argues that the Police Report, in fact, reveals that there was no evidence that she was actually choked. The plaintiff misapprehends the analysis. It is irrelevant whether or not his wife was actually choked. *See Williams v. South Carolina*, 2006 WL 3843608, at *6 (D.S.C. Dec. 22, 2006) ("press may publish a 'fair report' on official government proceedings such as arrest records, court records, or transcripts, even if the contents of those governmental records are defamatory"); *Walker v. Williams*, 2007 WL 486468, at *5 (D.S.C. Feb. 12, 2007). His wife alleged as much and the allegation was reflected in the News Reports, with substantial accuracy.

### 2.    "Left Bruises" and "Visible Injuries" on His Wife

The plaintiff also complains that the phrases "left bruises" and "visible [or physical] injuries" were defamatory statements because they were not specific enough and did not reflect the plaintiff's opinion that the bruises were "unremarkable" and "everyday." (Pl. Resp. at 3.) The language alleged, however, is taken directly from the incident report itself. The incident report states that "the victim had bruises on her right shin and right biceps area,"

12

her "right ankle was slightly swollen and bruised as well," and she "had redness around her throat". (Def. Ex. 1 at 2-3.)  Additionally, the arresting officers checked the "yes" box on the incident report next to "visible injuries (vict.)" and explained that these included: "redness around throat, bruises on arm, shin, [and] ankle."  *Id*. at 1, 3.  Not only are the News Reports substantially accurate, the Court is frankly of the opinion that, by summarizing, they are less inflammatory than even the Police Report itself.  Regardless, the News Reports accurately reflect the contents of the Police Report in this regard.

### 3.    "Beat Up His Wife"

The plaintiff next contends that WSPA 7's report that he "beat up his wife," followed by the station's broadcast about South Carolina leading the nation in domestic violence related deaths, improperly insinuated that plaintiff was charged with "murderous violence". (Pl. Resp. at 2.)  To the Court, this is the only statement in all of the News Reports which raises any concern, principally because it is the only portion of the News Reports that can even be remotely characterized as an editorializing paraphrase.  While the phrase "beat up his wife" was probably unnecessarily colloquial, it was not inaccurate.

In context, a reporter of WSPA 7 stated, that the plaintiff was "arrested for beating up his wife."  (Pl. DVD.)  The reporter did not accuse the plaintiff of actually beating up his wife.  Rather, she summarized the reasons for his arrest as represented by the Police Report.  In accord, the Police Report clearly states that the officers were responding to a "domestic disturbance" and that the plaintiff used his "hands" as a "weapon" in an act of "domestic abuse" that left his estranged wife "bruis[ed] and "swollen."  (Def. Ex. 1 at 1-3.)  As discussed, the Police Report indicates that the plaintiff's wife accused him of choking her, pushing her down, and that she, in fact, suffered visible injuries, including redness around the neck and bruising.  It simply cannot be argued that the phrase, "beat up his wife," is anything less than a fair and accurate summary of a report which otherwise charges

13

the plaintiff with using his hands as a weapon in an act of domestic violence that left the victim bruised and swollen.  The use of "shorthand" to summarize the contents of the Police Report "does not render [it] inaccurate."  *Seymour*, 557 F. Supp. at 956.

Obviously, the plaintiff contests the events of the incident between him and his wife, but that is not the burden of the defendants to resolve.  The fair report privilege permits them to reasonably rely upon the contents of the public record, and the phrase "beat up his wife" does not deviate from the Police Report in a way that would forfeit that privilege's protection.  At worst, it is a somewhat crude shorthand.

As to the story run by WSPA 7 regarding South Carolina as the nation's leader in murders resulting from domestic violence, the story is not defamatory as to the plaintiff.  The Court has reviewed that story and it does not mention the plaintiff.  It does not imply that he killed his wife.  The chronology of the stories is not defamatory.  The Court is unaware of any authority to support the argument that the order in which WSPA broadcasted the news stories could create a legally actionable defamatory nexus under the circumstances.

### 4.     "Push[ed] and Shov[ed] Her"

The plaintiff also argues that phrases like "pushed her" and "shoved her" are defamatory and that the defendant's should have known that bruising was inconsistent with someone being pushed into a sofa.  (Pl. Resp. at 3.)  The Police Report, however, states in three separate instances that (1) the plaintiff "overpowered [his wife] and pushed her down;" (2) the plaintiff "pushed [his wife] down against the couch;" and (3) the plaintiff "pushed [his wife] down."  (Def. Ex. at 2-3.)  Whether the defendants allegedly referred to the plaintiff's actions as "pushing" or "shoving" is irrelevant.  It is also irrelevant whether or not the plaintiff's wife's story was consistent or whether the defendants believed her.  The News Reports purport to be nothing more than restatements of the facts as expressly stated in the Police Report.  As to incidents of pushing and shoving, they are.

14

###### 5.    "Pushed Her Down Twice"

The News Reports all suggest that the plaintiff pushed his wife down twice.  The plaintiff argues, however, that the Police Report simply states that the plaintiff recounted on two separate occasions that he had pushed his wife down, not that he had pushed her down twice.  (Pl. Resp. at 2.)  The Police Report reads in relevant part: "He said one time that he overpowered her and pushed her down and kept control of the baby carrier.  A different time he said that she pushed him in the chest first while she was holding onto the baby carrier and he then pushed her down against the couch."  (Def. Ex. 1 at 2.)  In a number of the News Reports, the defendants actually show this specific portion of the physical Police Report, highlighted in yellow. [Doc. 39, Pl. DVD.]  Sometimes in the News Reports it is stated that the plaintiff was asked twice and sometimes it is implied, as the plaintiff argues, that the plaintiff actually pushed her down twice.

The Court would agree with the plaintiff that the Police Report appears to suggest that the plaintiff recounted, on two separate occasions, one incident of pushing.  But, the Police Report is not clear in this regard.  It would be an equally reasonable reading to conclude that the plaintiff had shoved her twice.  Again, the News Reports may not be an accurate account of what actually occurred but they greatly approximate the actual contents of the Police Report.   As stated, more than one of the Television Reports actually shows the relevant portion of the Police Report itself.  (See Pl. DVD.)

The Court also agrees that as a matter of law, even if the defendants misrepresented this particular detail, it is immaterial.  "If the gist or 'sting' of a statement is substantially true, 'minor inaccuracies will not give rise to a defamation claim.'"  *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990).  The statements, regarding pushing twice, do not tend to cause the story to produce a different effect on the audience than would have been produced had it stated that he pushed her only once.  *See*

15

*id.*  The Police Report suggests that he pushed her, choked her, and left her with bruising, swelling, and redness, all serious charges.  Whether there was one push or two does not elevate the magnitude of the alleged confrontation or convert the News Reports into legally actionable defamation, under the circumstances.

### 6.    "Assaulted" Her and "Fought with His Wife at Her Home"

The plaintiff further complains that phrases like "assaulted" and "fought with" used by the defendants imply a greater degree of confrontation than actually occurred.  (Pl. Resp. at 4.)  The plaintiff's accusations in this regard are not genuine.  Both phrases are entirely appropriate to summarize the details alleged in the Police Report, as already discussed above.   There is no doubt as to their substantial accuracy.    Differences in "legal nomenclature in reports on matters involving violation of the law are of no legal consequence."  *Seymour v. A.S. Abell Co.*, 557 F. Supp. 951, 956 (D. Md.1983); *see, e.g., Simonson v. United Press, Intern., Inc.*, 654 F.2d 478, 482 (7th Cir.1981) (defendant substituted the word "rape for the technically correct term sexual assault"); *Orr v. Argus Press Co.*, 586 F.2d 1108, 1112 (6th Cir.1978) ("swindle" substituted for "defraud").

### 7.    "Criminal Domestic Violence in the First Degree"

The plaintiff further alleges that the defendants represented that he had been arrested for "Criminal Domestic Violence in the First Degree" as opposed to Criminal Domestic Violence, *First Offense*.  The Court has reviewed all of the News Report and could not locate any that describe the charge as being in the first degree.  The defendants, in their reply brief, state that this characterization of the offense has never appeared in any News Report but only in the defendants' memorandum in support of summary judgment.  The plaintiff does not disagree and has not identified any News Report containing the alleged characterization.

16

Assuming *arguendo* that he could, the phrase is not actionable defamation. The Police Report identifies the "incident type" as "Criminal Domestic Violence 1st." (Def. Ex. 1 at 1.)   It is not apparent from the face of the News Report whether or not the "1st" designation refers to the "first degree" or "first offense." To interpret the charge as one in the first degree, would not be a substantial inaccuracy. The plaintiff argues that the Police Report shows that he was not listed on N.C.I.C., thereby indicating that it was his first offense. *Id*. at 2. Of course, it could be his first offense and a crime in the first degree. Those details are not mutually exclusive.

Regardless, the Court has not identified any News Report of the defendants that characterize the charge as one in the first degree.

### 8.    Arguing with his ex-wife "over their six-month-old son"

Lastly, the plaintiff complains that the defendants reported that he and his wife were arguing over their son. Virtually all of the News Reports characterize the basis of the dispute in this way. The plaintiff argues that nowhere in the Police Report does it describe an argument about their child and that the only argument mentioned was concerning real estate liens and other financial matters. The Police Report reads, in relevant part:

> He [the plaintiff] said that they began to discuss some liens and other financial issues and his wife became upset. He said that he had the baby carrier in his hand and told her that he wanted to see his son tomorrow at 4:00 P.M. He said that she told him no and pulled on the baby carrier. He said one time that he overpowered her and pushed her down and kept control of the baby carrier.

(Def. Ex. 1 at 1.) There is no question but that the Police Report describes a dispute over the child. In fact, the Police Report suggests that it is the precipitating cause of the physical altercation. The plaintiff requested to see the child the next day. *Id*. The wife immediately refused. *Id*. And, then she attempted to take the baby carrier from the plaintiff, at which time the plaintiff allegedly responded with some degree of force. *Id*. In contrast, as it

17

relates to the lien and financial issues, the Police Report specifically uses the word "discuss" and says that the plaintiff's wife "became upset."  (Def. Ex. 1 at 2.)  It was substantially accurate for the defendants to describe a dispute over the child and to even imply that such a dispute was the proximate cause of the alleged assault.  The Police Report, itself, so implies.  But regardless of whether the dispute over the child was, in fact, the proximate cause of the physical altercation is not important.  The Police Report describes such a disagreement and the defendants were permitted to report it without fear of liability.

The plaintiff also repeatedly implies that the defendants should have had reason to know that his wife's version of the story was incredulous and, therefore, should have been more dismissive of her claims.  He expends substantial energy arguing as much.  But, the plaintiff misapprehends the point.  The defendants are not arbiters of the truth of the incident.  In fact, taking sides in the dispute would have only increased the likelihood of defaming one or both of the involved parties.  The fair report privilege is precisely effective in this case because the defendants, in large part, recycled the Police Report verbatim.

The plaintiff also complains that the defendants did not take more affirmative steps to present a balanced news story.  For instance, he suggests that the defendants should have noted that the public policy in South Carolina requires that someone be arrested whenever a criminal domestic violence call is made.  Whether or not such is the requirement and whether or not such information would have made for a more balanced presentation is immaterial.  The absence of such details does not make the story against the plaintiff defamatory.

By virtue of his decision to run for public office, the plaintiff made himself a public figure and his life a matter of public interest.  Rightly or wrongly he was arrested for criminal domestic violence three days before the election.  The defendants would have been derelict in their professional and public duties not to cover the story.  The Court is sympathetic to

18

the devastating effect the incident must surely have had on the plaintiff, both in the short and long term.  But, his misdirected frustration at the substantially accurate and responsible journalism of the defendants is not persuasive.  If the defendants' coverage of this incident cannot be harbored in the guard of the fair report privilege, the Court cannot imagine journalism that could.

## II.    DEFENDANT ENTERCOM COMMUNICATIONS CORP. (D/B/A WORD/WYRD FM)

It is undisputed between the parties that no recordings or transcripts of reports aired by the defendant WORD are before the Court.  [Doc. 37, Ex. 5; Doc. 41, Attach. 1.] As a result the Court declines to make any analysis regarding the application of the fair report privilege to WORD's news reports, which it cannot compare to the Police Report.  WORD has submitted the affidavit of its Program Director, Bob McLain, which swears that the substance of WORD's coverage was "limited to essentially what was contained in the two attached 'Greenville News' articles concerning Mr. Cobin's arrest and subsequent statement concerning the charges."  [Doc. 37, Ex. 5 ¶ 3.]  This averment has not been conceded by the plaintiff, although he has given no reason to disbelieve it.  Further, the plaintiff has not suggested that there are any statements contained in WORD's coverage different than what has already been considered in regards to the other News Reports.

Notwithstanding, the Court declines to consider the affidavit and its representations on this motion to dismiss.  The better course would be to give the plaintiff a limited discovery period to test the veracity of WORD's representations and to investigate his claim further.  The Court would emphasize, however, that if WORD's reports are comparable in kind and quality to those already addressed herein, success on a claim of defamation for such reports is dubious.

**III.    DISCOVERY AND MOTIONS SCHEDULE**

The plaintiff and WORD, therefore, have 45 days to conduct discovery in this matter. The defendant WORD will have 15 days thereafter to submit any motion for summary judgment, as necessary. The plaintiff is also free at any time to voluntarily dismiss his claim, in the event his investigation reveals no continuing and colorable claim against WORD. .

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion to dismiss [Doc. 13] be GRANTED in part and DENIED in part. Specifically, the motion is GRANTED as to all defendants except Entercom Communications Corp. (d/b/a WORD/WYRD FM). It is ORDERED that the parties shall abide by the discovery and motions schedule as detailed herein.

s/ Bruce H. Hendricks
United States Magistrate Judge

April 8, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).